UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS                     C.A. No.: 1:11-12186RWZ

| | |
|---|---|
| VINCENT SULPRIZIO | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| LNV CORPORATION and MGC | ) |
| MORTGAGE SERVICING, Inc. | ) |
| Defendants | ) |
| | ) |

**PLAINTIFF VINCENT SULPRIZIO'S FIRST AMENDED COMPLAINT**

INTRODUCTION

This is a wrongful foreclosure case, brought by Vincent Sulprizio the owner and resident of Three Delaney Dr., in Walpole Norfolk County, Massachusetts. Mr. Sulprizio lives in the property with his wife and his three children. Mr. Sulprizio, together with his wife, Paula, was given a mortgage loan not in his best interest for the reasons similar to, or otherwise described in, *Commonwealth v. Fremont Investment& Loan Co.*, 452 Mass. 733, 739 (2008) *c.f. Frappier v. Countrywide Home Loans, Inc.,* ___F.3d. ____ (A.C.No.: 10-2193) (1st. Cir., 2011).  Subsequently, Mr. Sulprizio experienced hard times, and sought a modification from the above named Defendants, and their predecessors, who first granted the modification, and then appeared to deny it. Mr. Sulprizio seeks modification of the home loan,  an injunction preventing any foreclosure on his home, and monetary damages.

PARTIES

(1).   Vincent Sulprizio (herein "Sulprizio") is a natural person residing at Three Delaney Dr., in Walpole, Massachusetts (herein the "property").

(2).   The Defendant, LNV Corporation (herein "LNV") is a foreign corporation, not licensed to do business in Massachusetts and is, or purports to be, the holder of a mortgage recorded January 10th, 2007, in book 24443 at page 136, given to Accredited Home Lenders, Inc., and Mortgage Electronic Registration Systems, Inc., by assignment recorded March 18th, 2009, from Mortgage Electronic Registration Systems, Inc., to LNV in book 26458 at page 450.E

(3).   On information and belief, the Defendant, MGC Mortgage, Inc., is a Texas Corporation with a principal place of business at 1 Corporate Drive, Ste. 360 Lake Zurich, IL.

## FACTS

(4).   On around January 10th, 2007, the Plaintiff gave a mortgage in the amount of, $720,000.00 to Accredited Home Lenders, Inc., as Lender, and Mortgage Electronic Registration Systems, Inc. (herein MERS) as nominee.

(5).   The loan given to Sulprizio was an adjustable rate note, the cost of which was slated to increase over time, a copy of the note is attached hereto as Exhibit A.

(6).   The introductory rate was much lower than the fully amortized rate would have been at the time the loan was made.

(7).   At the time the loan was made, the mortgage debt as a result of the loan amounted to more than half of Mr. Sulprizio, and his wife Paula's monthly income.

(8).   According to the G.L.c. 93A Demand Response proferred by the Defendants, at the closing, Sulprizio was presented with a Truth in Lending disclosure statement suggesting that the annual "cost of credit" on the note was 12.12%, a copy of which is attached hereto as Exhibit B.

(9).   The amount financed, per the TILA Disclosure Statement was $702,893.25, despite the fact that the note is clearly for $720,000.00

(10).   While the finance charge was $2,513,109.85, which was due, in large part, to a $524,706.69 principal balloon payment in the 360th month.

(11).   The total of payments required to pay off the loan over 30 years is listed at $3,216.003.10 on Exhibit B.

(12).   However, this is not the total amount required to pay off a $702,893.25 loan over 30 years at 12.12% interest – that amount is $2,626,213.65.

(13).   As such, it is clear that Mr. Sulprizio would have – in actuality – been obligated to pay an amount of interest far greater than 12.12% - if the amount to be paid by him were to have a total of payments greater than $2,626,213.65.

(14).   Specifically, if Mr. Sulprizio had paid his mortgage for 30 years, he would have *in fact* had to pay an additional $589,789.45 in principal – an amount just slightly more than the balloon payment due on February 2nd, 2037, per the terms of the TILA disclosure statement/Exhibit B, on the last day of the note.

(15).   This can only mean that, in fact, Mr. Sulprizio was paying a great deal of additional interest throughout the period prior to February 2nd, 2037, and that, as such, the APR suggested by the TIL disclosure statement is grossly inaccurate.

(16).   While performing the mathematical equation necessary to turn principal payments into an annual percentage rate is extremely difficuly, one can <u>estimate</u> that, considering that Mr. Sulprizio would have had to pay an additional $589,789.45 in interest over the life of the loan, the actual Annual Percentage Rate was closer to **15.085%**.

(17).   On the 15th day of December 2006 the probable date credit was extended to Mr. Sulprizio) the annual yield on 30 year United States Treasury Bills was 4.72%.

(18).   As such, the loan was predatory, within the meaning of Massachusetts G.Lc. 183C.

(19).   Sulprizio had taken the loan thinking that it could serve as a useful backstop: allowing him to repay certain creditors, gain time to pay the mortgage, and to move his family into another home in Walpole, a community with which he and his family have very close ties. At the time the loan was made, only Mr.

3

Sulprizio's eldest daughter had been enrolled in Walpole High School as a freshman, and not his two younger children.

(20).  Walpole High School is one of the better high schools in Massachusetts.

(21).  As such, when Sulprizio began having trouble paying his mortgage, he began working with the various banks servicing, or claiming to service, his mortgage loan, seeking either a modification, a refinance, or some kind of forbearance which would allow him to become current on his mortgage loan.

(22).  He further sought to avoid problems with his credit, by modifying the loan, and staying current on his payments.

(23).  Despite jumping through all of the "hoops" requested by his various servicers, including but not limited to LNV Corporation, no modification or refinance was ever offered to Sulprizio.

(24).  On or around October 1st, 2008, Vincent Sulprizio, and his wife Paula Sulprizio, filed for Chapter 7 Bankruptcy Protection, though they continued to pay their mortgage for as long as possible after the bankruptcy.

(25).  On or around December 9th, 2008, the Massachusetts Supreme Judicial Court decided *Commonwealth v. Fremont Investment and Loan*, 452 Mass. 733 (2008) giving birth to a new unfair and deceptive practices cause of action under Massachusetts State Law.

(26).  On or around March 18th, 2009, the mortgage was assigned by MERS to LNV Corporation.

(27).  LNV Corporation is, on information and belief, affiliated with Beal Bank, SSB of Texas and Nevada, and its principal Andy Beal, whom the Texas Secretary of State lists as a Director.

(28).  Beal Bank was founded by Andy Beal, who is, on information and belief, a purchaser of distressed assets, see attached as Exhibit C, an article from Forbes Magazine written in its ordinary course of business (which article is largely

4

laudatory of Mr. Beal) describing in great detail his regular purchases of assets "for pennies on the dollar."

(29). On information and belief, LNV Corporation is a holding corporation for distressed assets purchased by Mr. Beal and his associates.

(30). On information and belief, LNV Corporation has reason to know that the loans it purchases are not worth the face value of the loan – largely because of issues like those with the present loan.

(31). LNV Corporation is not, therefore, an innocent assignee, or a bona-fide purchaser for value, as it knows, or should know based on the low price it has paid, that the loans it has purchased are likely to contain a large number of "bad apples," or loans the ownership of which could be deemed an unfair and deceptive act or practice.

(32). LNV Corporation is not a subsidiary of a National Bank, a Bank Holding Company, or a Financial Holding Company, and is not affiliated with the same.

(33). Beal Bank is regulated by the State of Texas, and the Federal Deposit Insurance Corporation (herein the "FDIC").

(34). Regulation by neither the State of Texas, nor the FDIC is sufficient to exempt Beal Bank from registration as a foreign corporation with the Massachusetts Secretary of State in order to take "legal action" as more fully explained in G.L.c. 156D §§ 15.01, 15.02.

(35). A foreclosure is "legal action" within the meaning of G.L.c. 156D §§ 15.01, 15.02.

(36). By the terms of the Massachusetts Business Corporations Act, G.L.c. 156D §§ 15.01(b)(1) "the ownership or leasing of real estate in the commonwealth" constitutes "transacting business" within the meaning of the Act.

(37). In Massachusetts, it has long been held that a foreclosing mortgagee owes a fiduciary duty to a mortgagor, when exercising the power of sale enshrined in a mortgage.

(38).   If a foreclosure at the Property were to occur, LNV Corporation would not be able to bid at the sale, as it could not legally own the Property.

(39).   It is axiomatic that participation by the Mortgagee in a power of sale foreclosure is important if a high price is to be obtained by the Mortgagor.

(40).   Today, Mr. Sulprizio and his wife and three children all live together in the Property.

(41).   Four years having passed since Mr. Sulprizio took the mortgage, and all of his children have either attended or, particularly relevant in this case *are* attending Walpole High School.

(42).   Also relevant: Mr. Sulprizio and or the predecessors in interest to the LNV Corporation and/or MGC Mortgage Servicing, Inc., grossly overestimated the value of his property by ordering an inflated appraisal, and, now, having been unable to sell the Property, Mr. Sulprizio's credit has taken a turn for the worse.

(43).   Mr. Sulprizio has recently motioned to re-open his bankruptcy, to add the recently discovered G.L.c. 93A and 183C claims referenced above. Lynn Riley, Esq., the Plaintiff's Chapter 7 Trustee, has indicated that she will likely abandon the Plaintiff's Claims.

## CLAIMS

### Count I – Violation of the Statutory Condition

(44).   The Plaintiff re-states and re-alleges paragraphs 1-43 as if separately set forth herein.

(45).   LNV is not licensed to do business in the Commonwealth of Massachusetts, see Exhibit D.

(46).   According to G.L.c. 156D § 15.02(c) A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor is required to deliver to the secretary of state for filing the certificate required by section 15.03. If it so determines, the court

may further stay the proceeding until the foreign corporation or its successor delivers the certificate and it is filed.

(47). Because LNV Corporation is not licensed to transact business in the Commonwealth, the Court may stay any foreclosure sale scheduled by LNV Corporation, per G.L.c. 156D § 15.02.

(48). Since "the ownership or leasing of real estate in the commonwealth" constitutes doing business for the purposes of G.L.c. 156D § 15.01(b)(1), LNV may not bid at any foreclosure sale in Massachuchusetts, which would prejudice the Plaintiff, as any third part bidding at the sale is likely to realize that it can get away with an absurdly low bid without a bid by the mortgagee.

(49). Likewise, the Defendant, as the Plaintiff in the Massachusetts Land Court, filed a Complaint to foreclose mortgage, an action voidabl;e as a result of its failure to file a certificate of registration with the Massachusetts Secretary of State. As a result, any third party purchaser reviewing title is going to have to discount its bid significantly, as it would likely be unable to obtain Title Insurance going forward (since filing a Soldier's and Sailor's Complaint in the Massachusetts Land Court is generally a requirement to obtain clean title). This would likely have a direct effect on the sale price of the property at auction

(50). As such, the Plaintiff will be DAMAGED if LNV is allowed to proceed with any foreclosure sale, and the foreclosure sale in this case must be stayed.

Count II – Unfair and Deceptive Acts and Practices

(51). The Plaintiff re-states and re-alleges paragraphs 1-50 as if separately set forth herein.

(52). The Plaintiff is a consumer.

(53). The Defendant is engaged in trade or commerce.

(54). The loan held by the Defendant meets the four part test elucidated in *Commonwealth v. Fremont Savings and Loan*, 452 Mass. 733, 749 (2008)

7

concluding that the Superior Court (Gants, J.) was correct in determining that "[a] lender should recognize at the outset the borrower is not likely to be able to repay."

(55). The loan in the instant case meets the four standards elucidated in *Fremont*: (1) It was an adjustable rate mortgage with a low initial rate, followed by a higher rate going forward; (2) it was for all, or substantially all, of the equity in Sulprizio's home, or in the alternative, the balloon payment which substantially increased the *actual* interest rate of the loan was a balloon payment within the meaning of the *Fremont* four factor test; (3) the payments on the mortgage would have been 50%, or more, of Sulprizio's income; (4) the adjusted rate, at or around the time the loan was made, was much higher than the lower, original, introductory rate.

(56). The Defendants, or their predecessors for whose actions they are responsible knew that the monthly payment would account for more than half of the Sulprizio's income.

(57). Loans meeting the four standards above are, *per se*, unfar and deceptive practices in Massachusetts.

(58). The Plaintiff sent a G.L.c. 93A demand letter to the Defendant, a copy of which is attached hereto as Exhibit E.

(59). The Defendant did not tender a reasonable offer of settlement, and unreasonably denied liability in its response to the Plaintiff's Demand Letter, a copy of which is attached hereto as Exhibit F.

(60). If loans similar in character to those at issue were purchased, and were unfair or deceptive, [the purchaser] may be ordered to help remedy that unfairness or deception.

(61). If a loan is found to be a Fremont Four Factor loan, the burden of proof shifts to the Defendant to show why the loan was not unfair or deceptive.

(62).  Because, on information and belief, the Defendant purchased the Plaintiff's loan, or the package of loans amongst which the Plaintiff's loan was included for cheap, the Defendants knew, or should have known that it was an unfair or deceptive loan.

(63).  The loan at issue was unfair, the Plaintiff was damaged, and the Defendants should be ordered to remedy that unfairness and deception.

Count III – Violation of the Massachusetts Predatory Home Loan Practices Act

(64).  The Plaintiff re-states and re-alleges paragraphs 1-63 as if separately set forth herein.

(65).  The actual finance charge in this case, given the balloon payment, was close to, or about, 15%, at the time the loan was originated.

(66).  The yield on United States Treasuries at or around the fifteenth of the month prior to the application for the extension of credit was 4.69% in November of 2006, and 4.72% in December of 2006.

(67).  Either way, the yield on United States Treasuries was more than 8 points higher than the Annual Percentage Rate on the Sulprizio Mortgage.

(68).  The Sulprizio Mortgage was thus, *by definition*, a "High Cost Mortgage Loan" as defined by G.L.c. 183C § 2.

(69).   The provisions of G.L.c. 183C § 18(b) provide that, "[a]n aggrieved borrower or borrowers may bring a civil action for injunctive relief or damages in a court of competent jurisdiction for any violation of this chapter."

(70).   The provisions of G.L.c. 183C § 18 (c) provide that: [i]n addition the court **shall**, as the court may consider appropriate: (1) issue an order or injunction rescinding a home mortgage loan contract which violates this chapter, or barring the lender from collecting under any home mortgage loan which violates this chapter; (2) issue an order or injunction barring any judicial or non judicial foreclosure or other lender action under the mortgage or deed of trust securing any home

9

(71). The provisions of G.L.c. 183C § 15(a) provide that: "[a]ny person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender or broker of the loan..."

(72). The provisions of G.L.c. 183C apply "notwithstanding any other provision of law," and are clearly intended to remain forever personal to a mortgagor, pursuant to G.L.c. 183C § 15 (b)(2) and G.L.c. 183C § ©.

(73). The provisions of G.L.c. 183C § 15 apply broadly to the instant case. The Plaintiff has been damaged by the loan in the instant case, and requests relief in the form provided for by G.L.c. G.L.c. 183C § 18 (c), as well as the other provisions of the Predatory Home Loan Practices Act, as well as an *injunction*.

mortgage loan which violates this chapter; (3) issue an order or injunction reforming the terms of the home mortgage loan to conform to this chapter; (4) issue an order or injunction enjoining a lender from engaging in any prohibited conduct; or (5) impose such other relief, including injunctive relief, as the court may consider just and equitable" [emphasis supplied].

Count IV – Unconscionability

(74). The Plaintiff re-states and re-alleges paragraphs 1-73 as if separately set forth herein.

(75). The Defendant's loan is unconscionable, insofar as it has an extremely high interest rate, and was an extremely expensive loan for the Plaintiff.

(76). The Plaintiff has been damaged by the Defendant's unconscionable loan.

WHEREFORE, the Plaintiff, Vincent Sulprizio, humbly requests this Honorable Court ORDER the following relief:

      (a) Enter an injunction, restraining any foreclosure sale at Three Delaney Drive in Walpole, Massachusetts, until further ORDER of the Court, or AGREEMENT of the Parties;

      (b) ORDER the Defendants to pay the Plaintiff's costs, including his reasonable attorney's fees;

      (c) ORDER the Defendants to pay damages to the Plaintiffs in an amount to be determined at trial.

## **JURY DEMAND**

The Plaintiff requests trial by jury on all matters so triable.

                          Respectfully Submitted,
                          Vincent Sulprizio
                          By His Attorney,

Dated: December 16th, 2011   /S/ Jonas A. Jacobson

                          _____
                          Jonas A. Jacobson
                          872 Massachusetts Avenue, Unit 1-6
                          Cambridge, MA 02139
                          617.230.2779
                          BBO #676581
                          jonas@jonasjacobson.com

## **VERIFICATION OF COMPLAINT**

I, Vincent Sulprizio, the Plaintiff in this action, having been duly sworn, do hereby depose and say that I have read the foregoing Verified Complaint, filed on my behalf by my attorney, Jonas A. Jacobson, that I know the contents thereof, and that the facts stated therein are true to my knowledge.

Signed under the Pains and Penalties of Perjury.

/S/ Vincent Sulprizio
_____
Vincent Sulprizio

## **CERTIFICATION**

I hereby Certify that this document has been filed through the ECF system and will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing, and paper copies will be sent to those non-registered participants

/S/ Jonas A. Jacobson
_____